CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389

W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )
                                         Case Number: 24-C-22-002627 MT
                                         C I V I L
Meghan Halub Vs. The Johns Hopkins Health System Corp. Et Al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: THE JOHNS HOPKINS HEALTH SYSTEM CORPORATION
Serve On: Peter B. Mancino
          1812 Ashland Avenue, Suite 300
          Baltimore, MD 21205


        You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:  Meghan Halub
                                  217 14th Avenue SW, Apt. 1323
                                  Rochester, MN 55902

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland


Date Issued:  06/13/22

                        Marilyn Bentley
                        Clerk of the Circuit Court


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.


EXHIBIT
A

CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )
Case Number: 24-C-22-002627 MT
C I V I L
Meghan Halub Vs. The Johns Hopkins Health System Corp. Et Al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: THE JOHNS HOPKINS UNIVERSITY
Serve On: Arthur P. Pineau, Interim General Counsel
          113 Garland Hall
          3400 North Charles Street
          Baltimore, MD 21218


        You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:  Meghan Halub
                                  217 14th Avenue SW, Apt. 1323
                                  Rochester, MN 55902

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland


Date Issued:   06/13/22

Marilyn Bentley
Clerk of the Circuit Court        per


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389

W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )
Case Number: 24-C-22-002627 MT
C I V I L
Meghan Halub Vs. The Johns Hopkins Health System Corp. Et Al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: THE JOHNS HOPKINS HOSPITAL
Serve On: Peter B. Mancino
          1812 Ashland Avenue, Suite 300
          Baltimore, MD 21205


        You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:  Meghan Halub
                                  217 14th Avenue SW, Apt. 1323
                                  Rochester, MN 55902

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland

Date Issued:  06/13/22

                    Marilyn Bentley
                    Clerk of the Circuit Court



To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

IN THE CIRCUIT COURT FOR Baltimore City

(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☒PLAINTIFF ☐DEFENDANT    CASE NUMBER _____

(Clerk to insert)

CASE NAME: Meghan Halub                    vs. Johns Hopkins Health System Corp. et al.

Plaintiff / Defendant

PARTY'S NAME: Meghan Halub                              PHONE: (231) 557-6996

PARTY'S ADDRESS: 217 14th Street, Apt 1323, Rochester MN 55902

PARTY'S E-MAIL: meghan.halub@gmail.com

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Gregory P. Care, Lauren J. Kelleher    PHONE: (410) 962-1030

PARTY'S ATTORNEY'S ADDRESS: 120 E. Baltimore Street, Suite 2500, Baltimore MD 21202

PARTY'S ATTORNEY'S E-MAIL: gpc@browngold.com; lkelleher@browngold.com

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known:_____

ANTICIPATED LENGTH OF TRIAL?: __10__ hours __2__ days

### PLEADING TYPE

New Case: ☒Original     ☐Administrative Appeal   ☐ Appeal

Existing Case: ☐Post-Judgment    ☐Amendment

*If filing in an existing case*, skip Case Category/ Subcategory section - go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (Check one box.)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☒ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☒ Damages-Punitive | ☐ Judgment-Default | ☐ Reinstatement of Employment | |

*If you indicated **Liability** above*, mark one of the following.  This information is not an admission and may not be used for any purpose other than Track Assignment.

☐Liability is conceded. ☐Liability is not conceded, but is not seriously in dispute. ☐Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000       ☐ $10,000 - $30,000       ☐ $30,000 - $100,000       ☒ Over $100,000

☐ Medical Bills $_____       ☐ Wage Loss $_____       ☐ Property Damages $_____

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation        ☒Yes   ☐No                C. Settlement Conference   ☒Yes   ☐No
B. Arbitration      ☒Yes   ☐No                D. Neutral Evaluation       ☒Yes   ☐No

### SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

### ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*        ***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less          ☐ 3 days of trial time

☐ 1 day of trial time               ☐ More than 3 days of trial time

☒ 2 days of trial time

### BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                   Defendant's response

EMERGENCY RELIEF REQUESTED

### COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response      ☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____ . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

June 10, 2022
Date

120 East Baltimore Street, Suite 2500
Address

Baltimore          MD          21202
City          State          Zip Code

Signature of Counsel / Party

Gregory P. Care, CPF No. 0612120124
Printed Name

MEGHAN HALUB,                                    *        IN THE
217 14th Avenue SW, Apt 1323
Rochester, Minnesota 55902,                      *        CIRCUIT COURT

       Plaintiff,                              *        FOR BALTIMORE CITY

       v.                                      *        Case No. _____

THE JOHNS HOPKINS                               *
HEALTH SYSTEM CORPORATION,
600 North Wolfe Street                          *
Baltimore, Maryland 21205,
                                                *
    Serve:  Resident Agent                  *
        Peter B. Mancino
        1812 Ashland Avenue, Suite 300         *
        Baltimore, Maryland 21205,             *

THE JOHNS HOPKINS UNIVERSITY,                   *
3400 North Charles Street
Baltimore, Maryland 21218-2608,                 *

    Serve:  Resident Agent                  *
        Arthur P. Pineau
        Interim General Counsel                *
        113 Garland Hall
        3400 North Charles Street              *
        Baltimore, Maryland 21218,             *

THE JOHNS HOPKINS HOSPITAL,                     *
600 North Wolfe Street
Baltimore, Maryland 21287,                       *

    Serve:  Resident Agent                  *
        Peter B. Mancino
        1812 Ashland Avenue, Suite 300         *
        Baltimore, Maryland 21205,             *

       and                                     *

IRENE PSORAS,                                   *
225 Promenade Street, Apt. 531
Providence, Rhode Island 02908,                 *

       Defendants.                             *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Meghan Halub, by and through her undersigned attorneys, sues Defendants The Johns Hopkins Health System Corporation, The Johns Hopkins University, The Johns Hopkins Hospital, and Irene Psoras, and alleges:

### PARTIES

1.      Plaintiff Meghan Halub is a resident of Rochester, Minnesota. At all times relevant to the matters alleged in this Complaint, Plaintiff was a resident of Baltimore, Maryland.

2.      Defendant The Johns Hopkins Health System Corporation is a not-for-profit healthcare and hospital system located in Baltimore, Maryland and formed under the laws of Maryland.

3.      Defendant The Johns Hopkins University is a not-for-profit, educational corporation located in Baltimore, Maryland and formed under the laws of Maryland.

4.      Defendant The Johns Hopkins Hospital is a not-for-profit academic medical center located in Baltimore, Maryland and formed under the laws of Maryland.

5.      The Defendants identified in Paragraphs 2-4 are collectively referred to as the "Hopkins Defendants."

6.      Defendant Irene Psoras is a resident of Providence, Rhode Island. At all times relevant to the matters alleged in this Complaint, Psoras worked in Baltimore, Maryland and was employed by one or more of the Hopkins Defendants.

### JURISDICTION & VENUE

7.      This Court has jurisdiction over this matter pursuant to Md. Code, Cts. & Jud. Proc. §§ 1-501 and 4-401.

2

8.     This Court has personal jurisdiction over Defendants pursuant to Md. Code, Cts. & Jud. Proc. § 6-103(b) because they did transact business at the relevant times alleged in this Complaint, or continue to transact business, in Maryland and caused tortious injury in Maryland. This Court also has personal jurisdiction over the Hopkins Defendants pursuant to Md. Code, Cts. & Jud. Proc. § 6-102(a) because they are domiciled in, will be served with process in, are organized under the laws of, or maintain principal places of business in Maryland.

9.     Venue in this Court is proper pursuant to Md. Code, Cts. & Jud. Proc. § 6-201(a)-(b) because the Hopkins Defendants maintain their principal offices in Baltimore City and Defendant Psoras may be sued in a county in which any one of the defendants could be sued or in the county where the cause of action arose, which is Baltimore City.

## FACTS

10.     On August 1, 2018, Meghan Halub, M.D. ("Dr. Halub" or "Plaintiff") began a cardiothoracic surgery fellowship at The Johns Hopkins Hospital in Baltimore.

11.     At various points during Dr. Halub's training in the fellowship program, she was also a patient of an obstetrics and gynecology ("OB/GYN") medical practice based at Johns Hopkins Bayview Hospital, another facility within the Johns Hopkins Medicine system. Her status as a Johns Hopkins patient was unrelated to her activities as a fellow.

12.     In or about May 2019, Dr. Halub learned that she was pregnant.

13.     Dr. Halub went to her OB/GYN practice at Hopkins Bayview to receive care for her pregnancy. She chose to go to an OB/GYN away from the main Johns Hopkins Hospital campus where she worked to protect her privacy and because she worried that she would be treated adversely for being pregnant. She was so fearful of adverse employment action that she asked her OB/GYN to document those concerns in her appointment notes.

3

14.     Dr. Halub tried to keep her OB/GYN appointments on days when she was post-call (i.e., not working) so that no one related to her fellowship would have reason to know she was going to medical appointments or question her about taking time off to attend them.

15.     Dr. Halub lost her pregnancy in June 2019. Up to that point, she had not told anyone at Hopkins aside from her OB/GYN care team about her pregnancy.

16.     Out of a concern that someone in her program had accessed or would try to access her medical records, Dr. Halub called the Johns Hopkins Privacy Office ("Privacy Office") on July 30, 2019 and spoke to the Deputy Privacy Officer, Courtney Landy ("Landy"). Dr. Halub explained her concerns and requested that the Privacy Office audit her health records to see if anyone outside of her OB/GYN practice had improperly viewed them. Dr. Halub also expressed her concern about the potential for future inappropriate access of her medical records.

17.     Landy sent Dr. Halub a letter the next day, noting that the Privacy Office was investigating her complaint and "determining if there was a breakdown in our manual or automated processes; reviewing medical record access logs where available and determining whether those who accessed had a legitimate reason for doing so and did so only for those reasons; interviewing staff members who may have been involved; determining whether involved staff members have taken our required privacy training courses and have signed our required confidentiality agreement."

18.     Landy's letter further noted that if a violation had occurred, the Privacy Office would "take appropriate corrective action," including changes in policies/procedures, verbal or written warnings, or even termination. The Privacy Office could have, but did not, take any steps to ensure protection of Dr. Halub's medical records at that time, nor did it mention during any of

the aforementioned contacts with Dr. Halub that protective measures were available to protect her medical records from inappropriate access.

19.     By letter dated September 27, 2019, Landy notified Dr. Halub that "a Johns Hopkins Hospital workforce member inappropriately accessed [her] health information" and viewed every OB/GYN appointment note, imaging, and physical exam result from appointments from March through June of 2019. Those records included confidential medical information including medications, names of her providers, dates and locations of services, diagnoses and conditions, medical and social history, and problem list. They also contained personal identifying information such as her date of birth, address, telephone number, and mother's maiden name.

20.     Landy's September 27, 2019 letter further noted that the "workforce member involved in this incident is no longer employed by Johns Hopkins Hospital," but provided no other information beyond stating that Dr. Halub should monitor her accounts and that the internal investigation was closed.

21.     After receiving the letter, Dr. Halub called Landy and asked for more information about who at Hopkins had breached her medical records. Landy told Dr. Halub the breach had occurred on August 1, 2019—after Dr. Halub had raised her concern with the Privacy Office and received formal acknowledgment of it—but that she could not share any other information for "safety reasons." Landy told Dr. Halub that no further action was required because Landy did not have any reason to believe the person who had inappropriately accessed Dr. Halub's records had used that information for other purposes and that the breach was otherwise "handled." Landy told Dr. Halub that if she wanted any other information or action taken, Dr. Halub would have to hire a lawyer.

22.     Dr. Halub asked if any security measures could be put in place to prevent a similar breach from happening again and Landy, for the first time, told her about the "Break the Glass Flag," which Landy said would issue a pop-up warning box any time someone tried to access her records. Dr. Halub asked that this protective measure be applied to her records.

23.     Dr. Halub also contacted, among others, Jessica Bienstock, the Hopkins Designated Institutional Official (the Hopkins employee overseeing all residency and fellowship programs), about her concerns but was again ultimately told that nothing else could be done.

24.     By letter dated November 22, 2019, Landy updated Dr. Halub regarding her July 30, 2019 privacy complaint. This cover letter noted the prior September 27, 2019 letter had not included the date on which a Hopkins employee "inappropriately accessed" her information. Attached to the cover letter was an updated response letter, which stated that the unauthorized access occurred on August 1, 2019. The cover letter also noted that Hopkins had placed the "Break the Glass Flag" on her records as of October 2, 2019, but provided no additional, substantive information regarding the breach.

25.     Dr. Halub was (and remains) devastated that such intimate physical and emotionally sensitive private medical information was accessed by someone at her workplace who had no legitimate reason to view it.

26.     She was further devastated by Hopkins' failure to prevent the breach of her medical records, appropriately remedy the breach once it was discovered, and timely implement steps to prevent another breach; the only protective or remedial action that was taken was the "Break the Glass Flag," which was implemented two months after the breach occurred despite the Privacy Office's forewarning and foreknowledge of the risk of a breach, and only after her specific inquiry and request.

27.     Dr. Halub spent the rest of her time in the fellowship program worried that she would be disciplined or otherwise have her career negatively impacted because of her reproductive choices and/or in retaliation for the now-breached confidential comments she made to her OB/GYN regarding her concerns about the fellowship program, as those comments may have been shared among members of her Department.

28.     The distress Dr. Halub experienced over the breach and Hopkins' mishandling of the same negatively impacted her personal life and relationships.

29.     As a result of the breach of her confidential medical records, she continues to suffer emotional distress and physical manifestations from that distress over the worry about where and with whom her private medical information was shared. She is now hesitant when seeking medical care, and about what information to share with medical providers, since that information is placed into medical records that may be breached.

30.     In early 2020, Dr. Halub, through counsel, contacted the Johns Hopkins University Office of the Vice President & General Counsel about the breach and Hopkins' inadequate response but received no additional information about who had perpetrated the breach, and/or what, if any, disciplinary action had been taken against them.

31.     On October 13, 2021, Dr. Halub, through counsel, again contacted the Hopkins General Counsel's office to ask the same questions about who was responsible for the breach and what consequences, if any, they had faced.

32.     After receiving this letter, Hopkins retained outside counsel who revealed, on February 9, 2022, that the person who had inappropriately accessed Dr. Halub's records was Irene Psoras.

33.     Psoras was a former vascular access nurse on the cardiac and thoracic floors at The Johns Hopkins Hospital where Dr. Halub had worked. Psoras was also the wife of one of Dr. Halub's co-fellows in the Hopkins fellowship program, Dr. Christopher Zambrano.

34.     As a Hopkins nurse, Psoras had access to the Epic electronic medical records system at Hopkins, but had no legitimate reason to view Dr. Halub's records. Dr. Halub was never under Psoras' care, and Psoras was not working with the OB/GYN practice at the other Hopkins medical campus that provided care to Dr. Halub.

35.     Under Hopkins' own privacy policy that was in place at the time of Psoras' breach, such a disclosure—to someone who was not Dr. Halub's provider and had no legitimate reason to view the records—was improper. This privacy policy applied to all Hopkins facilities, including Johns Hopkins Hospital, where Dr. Halub, Dr. Zambrano, and Psoras worked, and to Johns Hopkins Bayview Medical Center, where Dr. Halub's OB/GYN practice was located.

36.     On information and belief, Hopkins never interrogated Psoras about the breach, disciplined Psoras, or formally documented her infraction.

## COUNT I
### Violation of Maryland Confidentiality of Medical Records Act
### Md. Code, Health Gen. §§ 4-301 through 4-309
### (Against Psoras and the Hopkins Defendants)

37.     Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

38.     The Maryland Confidentiality of Medical Records Act ("MCMRA") requires that a healthcare provider, including a facility where health care is provided, a hospital, and "the agents, employees, officers, and directors of a facility and the agents and employees of a health care provider" shall "keep the medical record of a patient or recipient confidential" and disclose only as provided for by law. Md. Code, Health Gen. §§ 4-301(g)(1)-(2); 4-302(a)(1)-(2).

39.    The Hopkins Defendants are healthcare providers, hospitals, or owners/operators of healthcare providers and hospitals and had a duty under the MCMRA to keep its patients' (such as Plaintiff) medical records confidential.

40.    Psoras is also a healthcare provider and an agent of the Hopkins Defendants.

41.    The MCMRA states: "A health care provider or any other person is in violation of this subtitle if the health care provider or any other person: (1) Requests or obtains a medical record under false pretenses or through deception or (2) Discloses a medical record in violation of this subtitle." Md. Code, Health Gen. § 4-309(c).

42.    Psoras had no role in providing medical care to Plaintiff, and therefore had no reason to review Plaintiff's confidential medical records and information. Nevertheless, she used her Hopkins-provided access to the Epic electronic medical records system and, as Hopkins conceded, "inappropriately accessed" Plaintiff's medical records. Accordingly, Psoras obtained Plaintiff's medical records and information under false pretenses or through deception.

43.    Despite Plaintiff making complaints and expressing her concerns to the Hopkins Defendants about the risks posed to the privacy of her medical records before any breach occurred, the Hopkins Defendants improperly disclosed Plaintiff's medical records and information to Psoras in violation of the MCMRA.

44.    Psoras' breach of Plaintiff's records was not pursuant to any of the enumerated exceptions under the MCMRA, nor was it a disclosure made pursuant to any other law or legal obligation.

45.    Plaintiff seeks relief for this wrongdoing as stated in this Complaint.

9

<u>COUNT II</u>
**Intrusion upon Seclusion**
**(Against Psoras and the Hopkins Defendants)**

46.     Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

47.     Psoras, a Hopkins employee, intentionally used her Hopkins-provided credentials

to access Plaintiff's highly sensitive and confidential medical records and information; records

and information that are protected from such inappropriate access by law.

48.     Those records contained intimate, private details about Plaintiff's OB/GYN care

including every OB/GYN appointment note, imaging, and physical exam result from

appointments over the course of several months for the entire duration of her pregnancy. Plaintiff

made reasonable efforts to keep these records and this information private.

49.     Dr. Halub had a right to and reasonable expectation of privacy regarding all the

information Psoras inappropriately accessed as a Hopkins employee and/or agent on the Hopkins

electronic medical records system.

50.     Psoras' breach of Plaintiff's highly sensitive and confidential medical records and

information is highly offensive to a reasonable person, which is evidenced, in part, by the federal

and state laws and regulations (including the MCMRA and the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA")) prohibiting such breaches due to the high value

reasonable people place on the privacy of such information.

51.     The Hopkins Defendants are also vicariously liable for the tortious actions of their

employee and agent, Psoras.

52.     Psoras committed the intrusive breach of Plaintiff's confidential medical records

and information in the course and/or scope of her employment with the Hopkins Defendants,

which is evidenced by, among other things, that the breach was facilitated by the Hopkins

Defendants providing Psoras with unrestricted access to its entire electronic medical record system that allowed Psoras to commit the breach.

53.     Plaintiff has suffered mental and emotional harm as a result of the Hopkins Defendants' and Psoras' wrongdoing.

54.     Plaintiff seeks relief for this wrongdoing as stated in this Complaint.

## COUNT III
### Negligent Supervision
### (Against the Hopkins Defendants)

55.     Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

56.     The Hopkins Defendants, acting individually and/or by and/or through their actual and/or apparent agents, servants, and/or employees, owed a duty to Plaintiff to keep her medical records and information confidential under the MCMRA, HIPAA, their own privacy policies that they provided to patients and care providers, and common law.

57.     The Hopkins Defendants also had a duty to adequately train its employees on proper and improper circumstances to access patients' confidential medical records and information in furtherance of the Hopkins Defendants' duty to Plaintiff to keep her medical records confidential.

58.     The Hopkins Defendants also had a duty to adequately supervise its employees' access and use of patients' confidential medical records and information in furtherance of the Hopkins Defendants' duty to Plaintiff to keep her medical records confidential.

59.     The Hopkins Defendants employed Psoras as a vascular access nurse and provided her with login credentials to access Hopkins patient records and information at the time Psoras breached Plaintiff's confidential medical records and information.

60.     On July 30, 2019, Plaintiff notified the Hopkins Defendants that she was concerned that one of her colleagues (an agent or employee of the Hopkins Defendants) had attempted or might attempt to intrude upon her privacy by inappropriately accessing her confidential medical records and information.

61.     The Hopkins Defendants breached their aforementioned duties and were negligent in the following ways, among others:

A.      Failing to adequately train Psoras on proper and improper circumstances to access patients' confidential medical records and information;

B.      Failing to adequately supervise Psoras' access and use of patients' confidential medical records and information; and

C.      Failing to take any action to protect Plaintiff's medical records and information until October 2, 2019 when they implemented the "Break the Glass Flag" on Plaintiff's records—even though the breach had occurred months earlier and the Hopkins Defendants had forewarning and foreknowledge of the risk of the breach.

62.     The Hopkins Defendants' breaches of these duties are the proximate cause of Psoras' subsequent breach of Plaintiff's records and information that harmed Plaintiff.

63.     Plaintiff has suffered mental and emotional harm as a result of the Hopkins Defendants' negligence.

64.     Plaintiff seeks relief for this wrongdoing as stated in this Complaint.

## COUNT IV
### Negligence
### (Against the Hopkins Defendants)

65.     Plaintiff incorporates each of the foregoing allegations as if fully restated herein.

66.     As Plaintiff's healthcare providers, the Hopkins Defendants, acting individually and/or by and/or through their actual and/or apparent agents, servants, and/or employees, owed Plaintiff a duty to preserve the confidentiality of her private medical records and information, including preventing inappropriate access of her medical records and information within their custody and control.

67.     This duty arises from, among other sources, the MCMRA, the HIPAA Privacy Rule (45 C.F.R. Part 160 and Subparts A and E of Part 164) and Security Rule (45 C.F.R. §§ 160, 162, 164), the Hopkins Defendants' own privacy policy, and common law.

68.     The website for Johns Hopkins Medicine (an entity that is owned by Defendant The Johns Hopkins University) tells patients that "Johns Hopkins is committed to protecting your health information. Our Notice of Privacy Practices explains how all members of the Johns Hopkins organizations will safeguard your privacy." Johns Hopkins Medicine, Patient Privacy Information, https://www.hopkinsmedicine.org/Privacy/patients.html (last accessed June 10, 2022). On information and belief, this webpage stated the same promise to patients in July 2019.

69.     The Hopkins Defendants' own "Notice of Privacy Practices for Patients" effective at the time of Psoras' breach of Plaintiff's medical records and information states that "Johns Hopkins is committed to protecting the privacy of medical information we create or obtain about you. . . . We are required by law to: (i) make sure your medical information is protected . . . ."

70.     The Hopkins Defendants' duty to protect Plaintiff's confidential medical records and information from breach was especially present in light of Plaintiff's July 30, 2019 complaint to the Hopkins Defendants' Privacy Office that she suspected past and/or impending breaches of her medical records and information.

71.     The Hopkins Defendants, through their Privacy Office, acknowledged Plaintiff's complaint and concerns before Psoras breached Plaintiff's confidential medical records and information, as evidenced, among other ways, by Deputy Privacy Officer Landy's July 31, 2019 letter to Plaintiff.

72.     The Hopkins Defendants, acting individually and/or by and/or through their actual and/or apparent agents, servants, and/or employees, breached their duty by failing to protect the confidentiality of Plaintiff's medical records and information, including failing to take reasonable and timely actions to prevent a breach.

73.     Although the Hopkins Defendants' Privacy Office and its staff had the capability and opportunity to implement protective measures before Psoras breached Plaintiff's confidential medical records and information, such as restricting access to Plaintiff's records to only her care providers and implementing the "Break the Glass Flag," they did not do so.

74.     Indeed, the Hopkins Defendants failed to take any action to protect Plaintiff's confidential medical records and information until two months after Psoras' breach, when it implemented the "Break the Glass Flag" on Plaintiff's records on or about October 2, 2019.

75.     The Hopkins Defendants acknowledged that "a Johns Hopkins Hospital workforce member inappropriately accessed [Plaintiff's] health information" on August 1, 2019. Through counsel, the Hopkins Defendants identified Psoras as the Hopkins employee who committed the breach.

76.     The Hopkins Defendants' failure to act was a proximate cause of Psoras' subsequent breach of Plaintiff's records and information.

77.     The breach of Plaintiff's confidential medical records and information caused mental and emotional harm to Plaintiff.

78.   The Hopkins Defendants are also vicariously liable for the tortious actions of their employee, Psoras.

79.   Psoras committed the breach of Plaintiff's confidential medical records and information in the course and/or scope of her employment by the Hopkins Defendants, which is evidenced by, among other things, that the breach was facilitated by the Hopkins Defendants providing Psoras with unrestricted access to its entire electronic medical record system that allowed Psoras to commit the breach.

80.   Psoras "inappropriately access[ing]" Plaintiff's confidential medical records and information was a proximate cause of the harm to Plaintiff.

81.   Plaintiff seeks relief for this wrongdoing as stated in this Complaint.

## JURY DEMAND

Dr. Halub demands that her cause be tried by a jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court provide Plaintiff the following relief:

A.   Enter judgment in her favor and against Defendants on all Counts;

B.   Award Plaintiff compensatory damages in an amount unknown at this time with precision, but, upon information and belief, exceeds $75,000;

C.   Award Plaintiff punitive damages of $1,000,000;

D.   Award Plaintiff actual damages;

E.   Award Plaintiff costs of suit; and

F.   Award Plaintiff any such other and further relief as the Court deems just and proper or as the interests of justice may require.

Dated:  June 10, 2022

Gregory P. Care, CPF No. 0612120124
gpc@browngold.com
Lauren J. Kelleher, CPF No. 2008030009
lkelleher@browngold.com
BROWN GOLDSTEIN & LEVY LLP
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869

*Attorneys for Plaintiff Meghan Halub*

16

MEGHAN HALUB,                              *        IN THE

      Plaintiff,                          *        CIRCUIT COURT

    v.                                      *        FOR BALTIMORE CITY

THE JOHNS HOPKINS                         *        Case No. _____
HEALTH SYSTEM CORPORATION, *et al.*
                                          *
      Defendants.
                                          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ENTRY OF APPEARANCE

    Please enter the appearance of Gregory P. Care and Lauren J. Kelleher of Brown,

Goldstein & Levy, LLP as counsel for Plaintiff, Meghan Halub.

                           _____
                           Gregory P. Care, CPF No. 0612120124
                           gpc@browngold.com
                           Lauren J. Kelleher, CPF No. 2008030009
                           lkelleher@browngold.com
                           BROWN GOLDSTEIN & LEVY LLP
                           120 East Baltimore Street, Suite 2500
                           Baltimore, Maryland 21202
                           T: (410) 962-1030
                           F: (410) 385-0869

Dated:  June 10, 2022                     *Attorneys for Plaintiff Meghan Halub*

| | | |
|---|---|---|
| MEGHAN HALUB, | * | IN THE |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| THE JOHNS HOPKINS HEALTH | * | BALTIMORE CITY |
| SYSTEM CORPORATION, *et al.*, | * | Case No. 24-C-22-002627 |
| Defendants. | * | |

*   *   *   *   ooo0ooo   *   *   *   *

## NOTICE OF SERVICE

I HEREBY CERTIFY that on this 26th day of July, 2022, a copy of Plaintiff's First Interrogatories to Hopkins Defendants; Plaintiff's First Request for Production of Documents to Hopkins Defendants; Plaintiff's First Requests for Admission to Hopkins Defendants; and this Notice of Service was mailed electronically and by first class mail, postage prepaid to:

Marianne Plant, Esq.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
mdp@gdldlaw.com

*Attorney for Hopkins Defendants*

Gregory P. Care